U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUN 20 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| REBECCA THIBEAUX | CIVIL ACTION NO. 04-1609 |
| -vs- | JUDGE DRELL |
| ANTHONY J. PRINCIPI, *obo* UNITED STATES DEPARTMENT OF VETERANS AFFAIRS | MAGISTRATE JUDGE KIRK |

## RULING

A three-day bench trial was held in this matter on December 17 to 19, 2007. Following the close of evidence, we instructed the parties to submit proposed findings of facts and conclusions of law in light of the evidence presented at trial. Both sides have done so. We now address the merits of the suit.

### I. BACKGROUND

The plaintiff, Rebecca Thibeaux ("Thibeaux"), a white female, was employed by the defendant, Anthony Principi, Secretary of the United States Department of Veterans Affairs ("VA"), as a nurse beginning in 1989. From 1989 through early 2001, under three successive supervisors (Rose Bridges, Inga Delcambre, and Chris Mangle) on two different floors, Thibeaux received satisfactory performance evaluation reports and regular salary increases. For most of that time, Thibeaux was certified as a Licensed Practical Nurse ("LPN"), but in May of 2000 she received her Registered Nurse ("RN") certification and was promoted from LPN to RN based on Chris Mangle's evaluation reports.

In approximately March of 2001, Rheta Morgan, a black female, replaced Chris Mangle as Thibeaux's supervisor, which replacement triggered the chain of events

leading to this lawsuit. Upon being promoted to the position, Morgan was responsible for supervising her former peers, and by most accounts at trial, she was, on the whole, an unpleasant supervisor. In January of 2003, Thibeaux co-signed a petition with 21 other nurses (both black and white) on Floor 7BN and in ICU raising numerous complaints, including management's lack of respect and professionalism toward staff members; staffing shortages; scheduling problems; the ambiguous break policy; the lack of documentation regarding VA policies; the annual leave policy; and problems with furthering their education goals as a result of the scheduling policies. Based on her own problems with Morgan (for instance, Morgan's deeming Thibeaux absent without leave, and writing her up for it, when Thibeaux attempted to take ordinary leave), Thibeaux filed at least three complaints with the Equal Employment Opportunity ("EEO") office from 2002 to 2003.

Not all of those problems are before the Court. Thibeaux filed suit in this Court on July 29, 2004, limiting her complaint to the denial of her promotion from Nurse I to Nurse II in September of 2003. Promotions were decided by an internal Nurses Professional Standards Board ("NPSB"), based on a review of an employee's Official Personnel File ("OPF") and performance evaluations, or "Proficiency Appraisals." Thibeaux claims that the NPSB's denial of her promotion on September 10, 2003, was based on a mediocre performance evaluation completed by Morgan, which evaluation Thibeaux had refused to sign on or about September 8, 2003. Ultimately, Thibeaux claims that Morgan's evaluation and the subsequent failure to promote because of that evaluation were based on race discrimination, in violation of the Civil Rights Act of 1964,

Title VII, 42 U.S.C. § 2000e et seq. and La. R.S. § 23:332; and retaliation for her prior EEO complaints, in violation of Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e et seq. and La. R.S. § 23:967.

This ruling follows trial on the merits, at which extensive evidence was presented by both sides. We now examine each of the tried issues in this case—race discrimination and retaliation.

## II. RELEVANT LAW

Because Louisiana's discrimination statute is modeled on federal legislation, both the federal race discrimination claim under Title VII and the Louisiana state law race discrimination claim under La. R.S. § 23:332 rely on the same analysis.[1] See McCoy v. City of Shreveport, 492 F.3d 551, 556 n.4 (5th Cir. 2007); Motton v. Lockheed Martin Corp., 900 So.2d 901, 908-09 (La. App. 4 Cir. 2005) (on rehearing), writ denied, 904 So.2d 704 (La. 2005). Louisiana's retaliation statute is likewise so similar to the Title VII retaliation provisions that they may be construed the same way. McCoy, 492 F.3d at 556 n.4. For the sake of simplicity, we discuss only the federal standards.

This ruling follows trial on the merits. We previously denied the defendant's motion for summary judgment in a memorandum ruling dated March 30, 2007 (Doc. 55), in part based on our finding that the plaintiff had made out a prima facie case under the McDonnell Douglas framework. Under these circumstances, it is well established that we must inquire now not into the particular elements of the McDonnell Douglas

---

[1] For instance, prior to trial on the merits, analysis of both federal and state discrimination suits relies on the McDonnell Douglas framework, set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

3

framework, but into the ultimate question of whether discrimination and/or retaliation occurred. U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714-15 (1983) (discrimination); Irby v. Sullivan, 737 F.2d 1418, 1426 (5th Cir. 1984) (retaliation). As the Supreme Court summarized the test, "In short, the district court must decide which party's explanation of the employer's motivation it believes." Aikens, 460 U.S. at 716.

A Title VII plaintiff may prove one of two types of claim: either that the defendant's stated reason for making a particular employment decision is merely a pretext for discrimination (a "pretext" claim); or that the defendant had mixed motives, one of which was discrimination (a "mixed-motive" claim).[2] See Desert Palace, Inc. v. Costa, 539 U.S. 90, 92-95 (2003) (discussing history of "mixed-motive" claims). "Mixed-motive" claims allow a plaintiff to prove discrimination, using circumstantial or direct evidence, if he or she is able to prove that " race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); Desert Palace, 539 U.S. at 101-02. However, mixed-motive claims are potentially subject to substantially limited remedies:

> (B) On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
>
> > (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs

---

[2] "Mixed-motive" claims are expressly allowed by federal statute, 42 U.S.C. § 2000e-2(m), but there is no equivalently broad Louisiana statute or jurisprudence. Thus, Thibeaux has no "mixed-motive" claim under Louisiana law and must prove that the defendant's proffered reason is either false or a pretext. Cf. Wilson v. PNS Stores, Inc., 725 So. 2d 66, 71 (La. App. 4 Cir. 1998) (jury instructions in a pregnancy/sex discrimination case under former La. R.S. § 23:1008 did not err in speaking of a "motivating factor" where the instructions also required the plaintiff to prove that the employer's reason was "either false or just a pretext").

> demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
>
> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

42 U.S.C. § 2000e-5(g)(2)(B).

With the above standards in mind, we address the facts of this case to determine the ultimate question of whether discrimination and/or retaliation occurred.

### III. RACE DISCRIMINATION

Our determination that the defendant engaged in race discrimination turns on the particular facts of the promotion process and Morgan's evaluation of Thibeaux, which may be summarized as follows: Although the defendant argued that the decision not to promote Thibeaux to Nurse II was based solely on Thibeaux's failure to qualify for the position, we are not convinced that Thibeaux failed to meet objective criteria, only subjective criteria. The fact that Thibeaux's satisfaction of the subjective criteria was determined solely by her direct supervisor, Morgan, is problematic, because Morgan is the very person who allegedly discriminated against Thibeaux on the basis of race. We find, in short, that the defendant's decision not to promote Thibeaux was based on Morgan's subjective evaluation, and that race discrimination was at least a motivating factor in Morgan's decision to write the evaluation as she did.

Specifically, regarding the objective criteria for promotion to Nurse II, there was substantial evidentiary confusion at trial, to put it mildly, as to whether any employee at this VA hospital could achieve a promotion to Nurse II without first achieving Nurse I, Level 3, and whether Thibeaux was Nurse I, Level 2 or Nurse I, Level 3 at the time she

5

was denied promotion. As to that requirement (if it, in fact, was a requirement), it was so poorly documented and disseminated that nearly every witness at trial differed in his or her understanding and interpretation of it.

Even the VA's own "Nurse Qualification Standard 1999" manual, a self-styled "Guide for Registered Nurses," contains no such policy. Broadly speaking, the manual sets out education requirements for each grade, as well as nine dimensions of nursing practice: practice, quality of care, performance, educational/career development, collegiality, ethics, collaboration, research, and resource utilization. (Def. Exh. 1, Tab C16, p. 3). Each grade (and each of the three levels for Nurse I) has slightly different requirements for each of those dimensions, but no specific prerequisite is listed to move on to the next level. Although the manual states that "[a]ll nurses are expected to successfully perform activities appropriate to their grade or level" (Def. Exh. 1, Tab C16, p. 2) (emphasis added), which is eminently sensible, it also provides that "each nurse will have to meet all nine (9) dimensional standards in each grade to obtain promotion once the new standards are implemented for current employees." (Def. Exh. 1, Tab C16, p. 8) (emphasis added).

Although there was a variety of different interpretations at trial, ranging from certainty regarding the policy's existence to certainty that there was no such policy, on to admitted confusion, the manual most clearly illustrates that the nine dimensions and the education requirements were the most clearly articulated prerequisites for achieving a promotion to Nurse II. Significantly, in the letter to Thibeaux informing her of her failure to be promoted to Nurse II, the Nurse Executive mentions only the nine

dimensions and the fact that her BSN degree "was not verified without official transcript"; the letter makes no mention of any requirement regarding Nurse I, Level 3. (Pl. Exh. 15). The letter is entirely consistent with the manual. Taking into account the relative credibility of the witnesses and the substantial confusion on this point, we find that promotion to Nurse II did not require prior attainment of Nurse I, Level 3 status.[3]

Of course, according to Morgan's performance evaluation of Thibeaux, which Thibeaux refused to sign on or about September 8, 2008 (Pl. Exh. 13), Thibeaux had failed to meet several of the nine dimensions required for promotion—quality of care, research, and resource utilization. (Pl. Exh. 15). Because we have already ruled out the objective basis for disqualification from promotion (the Nurse I, Level 3 requirement), we find that Thibeaux was denied promotion to Nurse II based only on Morgan's subjective evaluation. Thus, the only question that matters—the ultimate question—is whether Morgan discriminated against Thibeaux, which requires some evidence that Thibeaux was treated less favorably than other similarly situated non-white employees.

There was extensive testimony that Morgan was, on the whole, a poor supervisor. By most accounts, she was alternately distant and antagonistic, and she failed to listen to the needs of the nurses under her authority, at least during the relevant period. The issue is not whether she was a poor supervisor, however; it is whether she was a discriminatory supervisor. Here the testimony conflicted. Both black and white nurses testified as to negative treatment, and both black and white nurses signed the petition to management seeking better treatment (Pl. Exh. 6), so to some extent there was equal

---

[3] In light of our determination that attaining Nurse I, Level 3 status was not a prerequisite for promotion to Nurse II, Thibeaux's actual status is moot.

treatment. However, there was also testimony that black nurses, especially Morgan's friends, were more likely to be given oral reprimands, rather than written admonishments, and given more desirable schedules. Although most of that testimony was credible, that alone would not be enough to prove discrimination, since Morgan's friendship with those particular black nurses would be as likely an explanation as discrimination.

What tips the scale is the credible testimony that Morgan, on more than one occasion, highlighted race in a negative manner. Nurse Ulla Tademy, a black female, testified that Morgan told her she shouldn't trust her "white friends" because she didn't know them. Tademy herself did not take the statement as racist, but she acknowledged that it could be so taken. Similarly, Patricia Eicke, a supervisor two levels above Morgan, testified about a complaint by Edith Sieg-Reed that Morgan said to "watch out for these white people [or white folks] around here," or something similar. Eicke could not remember management's specific follow-up to Sieg-Reed's complaint. Morgan denied making both of these statements, but we are convinced by Tademy's testimony that Morgan made the statement. Based on Tademy's testimony and on the credible testimony about the better treatment given the black nurses compared to the white nurses, we find that Thibeaux proved that race discrimination was at least a motivating factor in Morgan's decision to give her a poor evaluation, and thus in the defendant's decision not to promote her.

Based on the evidence before us, we cannot say that Morgan's mediocre evaluation of Thibeaux was merely a pretext for race discrimination. Although Thibeaux

has demonstrated that Morgan gave her no slack on her performance evaluation, where Morgan may have given a similarly situated black nurse the benefit of the doubt, there was ample testimony that the performance evaluation was not fundamentally flawed in itself. That is to say, Thibeaux actually had a few performance problems, such as deficient documentation and improper use of leave. Under the required dimensions for promotion to the Nurse II position, those performance problems would be sufficient basis for denying the promotion.

The evidence is sufficiently clear for us to find that the defendant would have denied Thibeaux the promotion, in light of her actual performance problems, "in the absence of the impermissible motivating factor," i.e., race, under 42 U.S.C. § 2000e-5(g)(2)(B). This was not a situation where a racially motivated supervisor simply made up a negative performance evaluation to sink the career of a subordinate. Morgan may not have cut Thibeaux any slack in the evaluation, but she apparently did not lie, either. The defendant's reliance on the performance evaluation was not improper under these facts. Accordingly, we find that the evaluation was not a mere pretext for race discrimination.

Still, in light of the testimony concerning Morgan's behavior, we find that Thibeaux has proved a "mixed-motive" claim under 42 U.S.C. § 2000e-2(m), since race was at least a motivating factor in Morgan's decision to complete the less-than-favorable performance evaluation of Thibeaux based on violations that similarly situated black nurses had evidently also committed without suffering such damaging consequences. As already noted, we find that the defendant proved that it "would have taken the same

action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). Thus, we cannot "award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C. § 2000e-5(g)(2)(B)(ii). We "may grant declaratory relief, injunctive fees . . . , and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m)," 42 U.S.C. § 2000e-5(g)(2)(B)(i), but because Thibeaux is no longer under Morgan's supervision and has not alleged ongoing discrimination, an injunction is not appropriate in this case.

To summarize, we find that race was a motivating factor in Morgan's completing a mediocre performance evaluation of Thibeaux, and Thibeaux is entitled to appropriate attorney's fees and costs, in an amount to be proved following the entry of judgment in this case.

## IV. RETALIATION

The retaliation claim is much simpler. Thibeaux has proved that she participated in protected activity, since she had filed several EEO complaints prior to the performance evaluation in question.[4] She has also proved that the defendant took an adverse employment action against her, since she was not promoted. However, Thibeaux has proved absolutely no causal connection between the protected activity and the adverse employment action. Thibeaux failed to present any evidence that Morgan was, or should have been, aware of the EEO complaints prior to the evaluation in question. Morgan

---

[4] Although Thibeaux argues that the petition she co-signed with the other nurses constituted protected activity, it was signed by both black and white nurses and did not involve discrimination or any other legal issue; it simply sought better management practices.

affirmatively testified that she did not know of the EEO complaints until long after the relevant time period, and we find her testimony on that issue to be credible. Although Thibeaux argues that the relatively close temporal proximity between the EEO complaints and the evaluation is enough to prove causality, there is no evidence to support that inference. Thus, we find for the defendant on Thibeaux's retaliation claims.

## V. CONCLUSION

Based on the foregoing, we will enter a separate judgment in favor of the plaintiff, Rebecca Thibeaux, declaring that race was a motivating factor in her denial of a promotion, and awarding only attorney's fees and costs to the extent attributable to that mixed-motive claim. Judgment will be entered for the defendant, Anthony Principi, Secretary of the United States Department of Veterans Affairs, on Thibeaux's retaliation claim.

SIGNED on this 19th day of June, 2008, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE